## In re GORDON, Inc.
### No. 16025.

District Court, W. D. Pennsylvania.
April 11, 1934.

E. E. Creps, of Indiana, Pa., referee.

W. H. Burd, of Johnstown, Pa., for N. L. Nesselson and Harold Berney.

Lewis M. Alpern and Abraham Herman, both of Pittsburgh, Pa., for trustee.

J. Wayne Tomb, of Indiana, Pa., and Harry M. Stein, of Pittsburgh, Pa., for Jacob Gordon.

SCHOONMAKER, District Judge.

The case came first to the attention of the court on January 5, 1933, on certificate to review a turn-over order made by referee E. E. Creps, requiring Jacob Gordon, president of bankrupt corporation, N. L. Nesselson, its vice president, and Harold Berney, its secretary, to turn over to the trustee certain properties.

On February 2, 1933, upon petition filed by Nesselson and Berney alleging the discovery of new evidence as to disappearance of corporate assets, and before a decision by the court on the certificate of review, the court referred this petition to Referee E. E. Creps to take the testimony of such witnesses as Nesselson and Berney might offer and to make due report thereof to the court. Thereafter, at the request of and by consent of counsel for all parties, this court, on March 9, 1933, revoked the order of reference to Referee Creps, and referred the matter to Referee Watson B. Adair of Allegheny county.

Referee Adair then proceeded with the duties of his appointment taking additional testimony, and upon consideration of that and the testimony taken before Referee Creps, filed his report on February 13, 1934, recommending individual turn-over as to all respondents.

Exceptions to the Adair report were filed by the trustee and each of the respondents. Respondent filed exceptions to the Creps report.

Both referees find that there was missing merchandise to the value of about $33,682.83. Of this, Referee Creps finds merchandise to the value of $5,064.95 went into the hands of Nesselson and Berney, that they should account for it, and that merchandise to the value of $28,617.88 was chargeable to all three respondents and should be accounted for by them. Referee Creps based this finding on the conclusion that a conspiracy existed between the three respondents to steal this merchandise. Referee Adair concluded that there was no conspiracy between these three respondents, and that although there was this large disappearance of assets, each respondent could only be charged with the value of what the evidence showed to have actually come into his hands individually.

Accordingly, he recommended that each respondent be held for merchandise in the

following amounts, to wit: Berney, $261.50; Nesselson, $4,803.45; Gordon, $7,793.23.

We therefore have for consideration and disposition at this time the reports of each referee and the exceptions thereto.

We have carefully reviewed all the evidence and considered the reports and findings of each referee. Our conclusion is that a conspiracy did exist among the three respondents to convert the merchandise of the bankrupt corporation to their own individual uses. While there was no proof of a formal agreement among the three respondents to convert the assets of this corporation to their own use, yet we believe that the only fair inference to be drawn from all the facts and circumstances is that a conspiracy did exist among these three respondents. The evidence discloses that these three respondents were the only stockholders of the corporation; that they were its corporate officers; that each of them, at periods of time during the abstraction of goods, was in charge of the business of the corporation; that during the period involved, i. e., June 12, 1930, to January 5, 1931, a period of unprecedented business depression, there were extremely heavy purchases of merchandise by the corporation in spite of failing volume of sales by the corporation in due course of business; that certain items of merchandise were directly traced to each of the respondents; that an inventory of stock on hand was taken, which, when considered in connection with the record of purchases and sales, must have disclosed to each of them that a large amount of merchandise was unaccounted for. Yet no steps were taken by any of the respondents to have that merchandise restored to the corporation.

We regard this as a proper case to look behind the corporate shield. There is no doubt about the shortage in merchandise that should have been turned over to the trustee. These respondents, as the only stockholders and officers of the bankrupt corporation, are the ones whose duty it was to turn over and account to the trustee for all corporate assets. So far as this turn-over proceeding is concerned, they may be properly looked upon as the bankrupt. Remington on Bankruptcy (4th Ed.) vol. 5, p. 485, § 2384, we believe, correctly defines the status of corporate officers thus: "The officers of a bankrupt are subject to such summary jurisdiction as being the bankrupt."

On the whole case, we are of the opinion that the trustee's exceptions to Referee Adair's report should be sustained; that the respondents' exceptions to Referee Creps' report and order thereon should be dismissed; and that the order of Referee Creps should be affirmed and sustained. An order may be submitted accordingly.